**Ex parte Matthew CHERRY.**

**Nos. 09–07–135 CR, 09–07–136 CR.**

Court of Appeals of Texas, Beaumont.

Submitted May 8, 2007.

Decided Aug. 1, 2007.

Discretionary Review Refused Oct. 17, 2007.

Joseph C. Hawthorn, Hawthorn & Hawthorn, P.C., Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Wayln G. Thompson, Asst. Crim. Dist. Atty., Beaumont, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This is an appeal of the trial court's denial of Matthew Cherry's applications for habeas corpus relief under section 11.072 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 11.072 (Vernon 2005). In his habeas applications, Cherry claims he was deprived of

the right to his choice of counsel. We reverse and remand for a new habeas hearing.

### Procedural Background

In this appeal, Cherry complains of the trial court's refusal to grant his motions to substitute counsel that he filed in two separate cases.[1] The record shows that Cherry filed motions to substitute Joseph C. "Lum" Hawthorn as his counsel several days prior to his sentencing hearing. Cherry's applications for writs of habeas corpus, which are sworn, aver that on September 16, 2005, the date of the sentencing hearing, Hawthorn was available and ready to serve as Cherry's counsel.[2] At the beginning of the hearing, the record reflects that Cherry orally requested that Hawthorn be allowed to represent him. The trial court denied Cherry's request and stated:

> The request to have Mr. Lum Hawthorn to substitute in as your attorney is going to be denied since [another attorney] was your attorney at the time the Court accepted your guilty pleas and this case [was] set for sentencing. Because of the lateness of the request, that is denied.

The trial court proceeded with the sentencing hearing in which Cherry's initial, retained counsel represented him rather than Cherry's desired counsel. At the conclusion of the hearing, the trial court assessed sentences in each case of ten years' deferred adjudication and a $2,500.00 fine. Cherry did not request a continuance at the September 16 hearing.

Later, Cherry filed applications for writs of habeas corpus complaining that the trial court denied him his right to paid counsel

---

1. The cases were appealed separately to this Court. As both cases present identical records and briefs, we address them in one opinion.

2. The State does not challenge Cherry's assertion that Hawthorn was present and ready to serve at the September 16, 2005, sentencing hearing. *See* TEX.R.APP. P. 38.2(a)(1)(B).

of choice. Because of the retirement of the judge that presided at the time of his sentencing, another trial judge ruled on Cherry's applications for writs of habeas corpus. The habeas court denied the applications without a hearing but entered findings of fact and conclusions of law. In its order, the habeas court stated that its rulings were based upon important considerations relating to the integrity of the judicial process and to the fair and orderly administration of justice, and that its actions did not "arbitrarily or unreasonably interfere with [Cherry's] choice of counsel."

### Analysis

Based on the comments of the trial judge who conducted the sentencing hearing, the trial court's sole reason for denying Cherry's motions to substitute was that the court considered Cherry's motions to have been filed too late.

However, it is not clear from the habeas court's findings that its decision on Cherry's habeas applications is premised upon the timing of Cherry's motions to substitute counsel. Moreover, we find nothing in the current record to support a finding that a deadline existed by which a criminal defendant in Jefferson County was required to file a motion to substitute counsel. It is possible, however, that the habeas court's rulings are based on the court's independent knowledge of a rule that established a deadline for motions to substitute counsel, or that the habeas court based its decision on other considerations not apparent from the record before us. In summary, from the findings of fact and conclusions of law entered by the habeas court, we are unable to accurately identify the basis of its ruling.

■ Our review of a habeas court's ruling should be based upon the habeas court's application of the law to the facts.

*See generally* TEX.R.APP. P. 31.2; *Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim. App.2003), *overruled on other grounds by Ex parte Lewis,* 219 S.W.3d 335 (Tex. Crim.App.2007). We should not be required to guess or speculate regarding what facts it may have considered as important to its conclusion. When a trial court rules on the merits of a habeas application, the requirements of findings of fact and conclusions of law are imposed by statute. *See* TEX.CODE CRIM. PROC. ANN. art. 11.072, § 7 (Vernon 2005). Recently, when faced with reviewing a trial court's ruling on a suppression motion, the Court of Criminal Appeals stated: "[C]ourts of appeals should not be forced to make assumptions (or outright guesses)" about the reasons for a trial court's decision. *State v. Cullen,* 195 S.W.3d 696, 698 (Tex.Crim. App.2006). In *Cullen,* the Court of Criminal Appeals held that the proper resolution of this problem is to require the trial courts to enter findings of fact and conclusions of law, and that such stated findings be "adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Id.* at 699.

■ In this case, the issue decided by the trial court and then the habeas court potentially implicates the right to retained counsel of choice, a right guaranteed under the Constitution. *See United States v. Gonzalez–Lopez,* —— U.S. ——, ——, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006). Both the United States and Texas Constitutions, as well as Texas statute, guarantee a criminal defendant the right to assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005). The United States Supreme Court regards the right to select counsel of one's choice "as the root meaning of the constitutional

guarantee." *Gonzalez–Lopez,* 126 S.Ct. at 2563.

 While the Texas Court of Criminal Appeals has explained that the right to counsel of choice is not absolute, "when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation." *Gonzalez v. State,* 117 S.W.3d 831, 837 (Tex.Crim.App. 2003) (citations omitted). The unreasonable deprivation of the right to counsel of choice qualifies as a "structural error" and, therefore, is not subject to a harmless-error analysis. *Gonzalez–Lopez,* 126 S.Ct. at 2563–64; *see also Johnson v. State,* 169 S.W.3d 223, 228–39 (Tex.Crim.App.2005) (no harm analysis conducted for federal constitutional errors considered "structural" by the United States Supreme Court).

Based on the record before us, we conclude the trial court's findings and the factual development of the record are inadequate to permit us to determine the merits of Cherry's claims that his rights were violated by depriving him of his choice of paid counsel. When a habeas record requires factual development, the Code of Criminal Procedure empowers the habeas court to "order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." *See* Tex.Code Crim. Proc. Ann. art. 11.072, § 6(b) (Vernon 2005).

We conclude that the appropriate remedy under these circumstances is to reverse and remand to allow the trial court to conduct another habeas hearing because, by virtue of a judge's retirement, the habeas court does not have personal knowledge of the prior proceedings, and the factual record presented for our review was insufficiently developed to include the essential facts necessary for appellate review. *See generally* Tex.R.App. P. 31.3 (In habeas appeals, "[t]he appellate court will render

whatever judgment and make whatever orders the law and the nature of the case require."). That proceeding may include, if deemed necessary by the trial court, a development of the factual record to determine whether Cherry's chosen retained counsel appeared and was ready to proceed on the merits of the sentence to be imposed on September 16, 2005, to identify the facts relied upon to determine that the motions to substitute were filed too late, as well as to allow the habeas court to make factual findings that demonstrate how granting Cherry's motions to substitute would have adversely affected the integrity of the judicial process or the fair and orderly administration of justice. After the habeas court makes its findings and conclusions, we are confident that we will have an adequate basis upon which to review the trial court's application of law to the facts. *See generally* Tex.R.App. P. 31.2 ("[T]he appeal will be heard and determined upon the law and the facts shown by the record.").

We reverse the trial court's orders in trial cause numbers 92441–A and 92442–A, and remand them for further proceedings consistent with our opinion. Following the hearing, should either party desire to appeal the trial court's orders, new notices of appeal will be required.

REVERSED AND REMANDED.

DAVID GAULTNEY, Justice, dissenting.

I respectfully dissent. Appellant sought new counsel after pleading guilty and before the date set for sentencing. A capias was issued for appellant on the day the first sentencing hearing was scheduled and his bond was increased at that time. The question presented is whether the trial court was required to permit substitution of new counsel on the second scheduled

date for sentencing. In *United States v. Gonzalez–Lopez*, the Supreme Court stated as follows:

> Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice.... We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, ... and against the demands of its calendar[.] ... This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel.

*United States v. Gonzalez–Lopez,* —— U.S. ——, —— – ——, 126 S.Ct. 2557, 2565–66, 165 L.Ed.2d 409 (2006) (internal citations omitted). I believe the trial court's "wide latitude" included the authority in this case to deny the motion to substitute and to proceed with the rescheduled sentencing hearing.