**Affirmed and Memorandum Opinion filed December 6, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00701-CR

### EX PARTE RAHUL SUDHAKAR

**On Appeal from the County Court at Law No. 1
Fort Bend County, Texas
Trial Court Cause No. 09-CCR-145197**

## M E M O R A N D U M   O P I N I O N

The State appeals the grant of an application for writ of habeas corpus, which vacated appellee, Rahul Sudhakar's, *nolo contendere* plea as involuntary under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).  We affirm.

### BACKGROUND

Although an Indian citizen, twenty-two-year-old Rahul Sudhakar has lived in the United States since childhood and last visited India for "like a week" when he was thirteen years old.  On August 16, 2009, Sudhakar was driving his vehicle and a police officer stopped him for speeding.  The officer recovered "one pill, Alprazolam"[1] from

---

[1] Alprazolam is a controlled substance sold under the brand name "Xanax."  *See*

Sudhakar and charged him with reckless driving, *see* Tex. Transp. Code Ann. § 545.401 (West 2011), and possession of a controlled substance, *see* Tex. Health & Safety Code Ann. §§ 481.104, 481.117 (West 2010).

Sudhakar was a lawful permanent resident and college student at the time, and his primary concern was "keep[ing] [his] record clean for future employers." To this end, Sudhakar's attorney secured a plea arrangement where the State agreed to dismiss the reckless driving charge if Sudhakar pled *nolo contendere* to the drug charge and accepted one year of deferred-adjudication community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.111 (West 2012) (discussing deferred adjudication). Deferred adjudication appealed to Sudhakar because he believed this arrangement would avoid a conviction. Neither Sudhakar's attorney nor Sudhakar knew, however, that the *nolo contendere* plea to the drug charges was a "conviction" for immigration law purposes and rendered Sudhakar presumptively deportable. *See* 8 U.S.C §§ 1101(a)(48)(A)(i), 1227(a)(2)(B)(i) (2006). Sudhakar discovered this fact more than eighteen months later when, as a result of his plea, Immigration and Customs Enforcement officers took him into custody and initiated proceedings to deport him. Sudhakar then applied for writ of habeas corpus and moved to set aside his plea arguing that the plea was involuntary and ineffectively counseled. Five witnesses testified at a hearing on the application: Sudhakar, his father, two immigration law attorneys, and Sudhakar's plea counsel. Plea counsel testified that he recited to Sudhakar the warning required by Texas Code of Criminal Procedure article 26.13(a)(4) (West 2012), which states that "a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." The attorney failed, however, to otherwise advise Sudhakar about the plea's likely immigration consequences.

Plea counsel also testified that, had he known the immigration consequences of the

---

http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000807/ (last visited November 29, 2012); *see also* Tex. Health & Safety Code Ann. § 481.104 (West 2010).

plea arrangement, he would have pursued an agreement that avoided immigration consequences. Based upon his knowledge and twenty-four years of criminal defense experience, plea counsel believed he could have secured such an alternative plea arrangement.

Both immigration law experts testified that the immigration warning Sudhakar received was inadequate advice considering the severe immigration consequences his plea carried. Sudhakar testified that, had he known that his plea would subject him to deportation, he would not have pled guilty. Both his father and plea counsel agreed with this statement.

Following the hearing, the court granted Sudhakar's writ application and ordered his plea set aside. The State appealed.

## ANALYSIS

We generally review a trial court's decision on an application for habeas corpus under an abuse of discretion standard of review. *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Richardson,* 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We consider the evidence presented in the light most favorable to the ruling. *Kniatt,* 206 S.W.3d at 664. This deferential review applies even when findings are implied rather than explicit and based on affidavits rather than live testimony. *Ex parte Wheeler,* 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006). If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *See Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds, Ex parte Lewis,* 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

In five issues, the State raises both procedural and substantive arguments against the grant of Sudhakar's petition. We begin with the State's substantive arguments that the habeas court erred in finding that Sudhakar's plea was ineffectively counseled and

3

involuntary.

## A. Ineffective Assistance of Counsel

The test for determining the validity of a plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Aguilar v. State*, 375 S.W.3d 518, 521 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). A two-pronged test applies to plea challenges premised upon ineffective assistance of counsel. *Id.* In order to demonstrate ineffective assistance of counsel, "a defendant must first show that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness; second, a defendant must affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.*

In *Padilla,* the U.S. Supreme Court applied these principles to an individual, Padilla, who argued that his guilty plea was involuntary because his lawyer failed to inform him of the plea's immigration consequences. 130 S. Ct. at 1478. The Court determined that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1482. It held that, because the terms of the statute rendering Padilla deportable were "succinct, clear, and explicit" and Padilla's plea counsel offered inaccurate advice about the plea's immigration consequences, Padilla's counsel was constitutionally ineffective. *Id.* at 1483. The Court explained:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* The Court remanded the case for determination of the prejudice prong. *Id.* at 1487.

In issue one, the State argues that *Padilla* does not apply retroactively. However,

in *Aguilar v. State*, we held that *Padilla* applies to pleas that predate the *Padilla* decision. *Aguilar*, 375 S.W.3d at 522-24. Accordingly, we overrule issue one.

*Ineffective Assistance and Other Voluntariness Doctrines.*

In issue five, the State argues that, because the habeas court's findings described Sudhakar's plea as "involuntary," the court "implicitly denied relief on [Sudhakar's] request to the degree [the request] was based on . . . ineffective assistance in the Sixth Amendment context." The State characterizes voluntariness and the right to counsel as "entirely separate bodies of case law" that the habeas court "inadvertently convoluted or completely misunderstood."

In *Aguilar*, however, this court analyzed the effectiveness of counsel under *Padilla* as an aspect of voluntariness. *Id.* at 521. *Aguilar*'s explanation of *Padilla* began by stating that "[t]he test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* We then applied *Padilla*'s ineffectiveness test to determine whether the plea under consideration was valid. *Id.* at 524-25. In this way, we clarified that, contrary to the State's argument, *Padilla* simply applies the uncontroversial proposition that "[a] guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *See Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012).

Here, the only basis Sudhakar presented to the habeas court for vacating his plea was his plea counsel's failure to render effective assistance under *Padilla*. As a result, we understand the habeas court's findings that "counsel did not properly advise [Sudhakar] regarding the immigration consequences of his plea" and that "[Sudhakar's] plea was therefore involuntary" to incorporate the same analysis of voluntariness and ineffective assistance we applied in *Aguilar*. We overrule the State's fifth issue.

*Deficiency of Performance.*

In issue two, the State argues that, because there are "many and varied potential waivers," Sudhakar's immigration consequences were not clear, and therefore, counsel's

5

warning that a plea "may result in deportation" satisfied *Padilla*'s requirements for effective assistance.

The nature of the advice *Padilla* requires depends upon whether a plea's immigration consequences are "truly clear." 130 S. Ct. at 1483. When the plea's "deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.* By contrast, when "the law is not succinct and straightforward" it suffices to advise a non-citizen client "that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

In *Aguilar*, we rejected the State's argument that the "discretion afforded to immigration officials to selectively prosecute deportation cases" rendered immigration consequences unclear. 375 S.W.3d at 525. We noted that the habeas applicant in *Aguilar* was presumptively deportable under 8 U.S.C. 1227(a)(2)(B)(i), the same statute that rendered Padilla presumptively deportable. *Id.* Because the *Padilla* court had already characterized this provision as "succinct, clear, and explicit," *Padilla*, 130 S. Ct. at 1483, we considered ourselves "bound by the Supreme Court's precedent in this matter." *Id.* Here, Sudhakar is also presumptively deportable under 8 U.S.C. 1227(a)(2)(B)(i),[2] the same "succinct, clear, and explicit" provision at issue in *Padilla* and *Aguilar*, and we are therefore similarly bound. *See Padilla*, 130 S. Ct at 1483; *Aguilar*, 375 S.W.3d at 525.

Because the consequences of Sudhakar's plea in this case were clear, trial counsel was obliged to advise him that his conviction for this offense made him subject to automatic deportation. Counsel's failure to do so mandates that counsel's performance be deemed deficient. *See Padilla*, 130 S. Ct. at 1478, 1483; *Aguilar*, 375 S.W.3d at 525. We overrule issue two.

---

[2] The statute provides as follows: "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is deportable." 8 U.S.C.A. § 1227(a)(2)(B)(i).

*Prejudice*

Deficient performance alone does not demonstrate ineffective assistance of counsel. *Aguilar*, 375 S.W.3d at 525. The habeas corpus applicant also must demonstrate prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984). Thus, in the guilty plea context, the defendant or applicant may "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Alternatively, a litigant can establish prejudice by showing a reasonable probability that a different plea bargain could have been negotiated at the time. *See Missouri v. Frye*, 132 S. Ct. 1399, 1409-10 (2012) (defendant established prejudice by showing that, but for counsel's ineffective assistance, he would have pled guilty with more favorable agreement); *Ex parte Lemke*, 13 S.W.3d 791, 796-97 (Tex. Crim. App. 2000) (same); *Ex parte Moreno*, No. 02-11-00272-CR, __ S.W.3d __, 2012 WL 3734003, at *6 (Tex. App.—Fort Worth August 30, 2012, pet. filed) (analyzing the claim that prejudice in a *Padilla* case resulted from not pursuing more favorable agreement, but concluding that the record contained no evidence that "the State would have considered such a plea bargain"); *Ex parte Wolf*, 296 S.W.3d 160, 170 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *see also United States v. Kwan*, 407 F.3d 1005, 1017-18 (9th Cir. 2005); *Mask v. McGinnis*, 233 F.3d 132, 141-42 (2d Cir. 2000); *Commonwealth v. Clarke*, 949 N.E.2d 892, 906 (Mass. 2011). In either event, "to obtain relief . . . a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485.

In issue three, the State argues that, here, the habeas court could not have found prejudice because it excluded certain evidence related to the facts of the underlying case. It argues that the court's exclusion of this evidence represents an erroneous implied finding that evidence of the underlying offense was irrelevant. Of course, the State is correct that the facts of Sudhakar's case are relevant to whether a decision to reject the plea arrangement would have been rational. *See Mangum v. Hargett*, 67 F.3d 80, 84 (5th

7

Cir. 1995) ("[P]rejudice[ ] depends partly on [a defendant's] chances for success at trial."). Contrary to the State's position, however, it appears that the habeas court did consider such evidence. Indeed, the court granted the State's request to cross-examine Sudhakar about "the underlying facts" of the case. The State then elicited testimony from Sudhakar about the traffic stop that resulted in his arrest. Nothing suggests that the court did not consider this evidence relevant to its evaluation of prejudice. The court also permitted the State to question Sudhakar's counsel about the underlying facts, but counsel remembered little, and the State made no effort to refresh his recollection. Although the habeas court excluded other evidence about the underlying offense, it did so on the basis that the evidence violated constitutional principles or evidentiary rules, not because it considered the evidence irrelevant.[3]

Sudhakar faced two charges, reckless driving and possession of a controlled substance. Sudhakar's plea counsel explained that often, when a defendant faces two charges, "[the State] may offer probation on one, and [it] dismiss[es] one." Indeed, here, the State offered probation and deferred adjudication for the controlled substance charge,

---

[3] At no time did the habeas court suggest that it believed evidence of the underlying offense to be irrelevant. Its principal concern appears to have been that testimony in the habeas hearing might be used against Sudhakar in a subsequent trial if the habeas application was granted. Thus, when the trial court ruled that the State could not ask Sudhakar directly whether he was guilty, it said:

> "I think that [introducing the underlying facts of the case] can be done without statements of absolute guilt. As far as your question, there are other ways to submit that -- to solicit the information without asking him if he's absolutely guilty of either one of the offenses or both of the offenses. You can ask him about defenses. You can ask him about circumstances; but as far as admission, out-right admission, I'm going to sustain the objection."

Similarly, when it excluded testimony from the arresting officer, the court appears to have been concerned that the officer's testimony about the underlying charges and defenses would be an unqualified expert opinion. When the State described the relevance of the officer's testimony, the court answered "[T]hat's opinion, isn't it?" Later, when discussing whether to include a videotape of the arrest as part of the bill of exception, the court said "I don't mind viewing the video and reading his affidavit; but as far as his testimony as to a legal defense, probability of a legal defense, I don't think he's qualified." Because the State does not argue that the trial court erred by excluding evidence on these bases, we express no opinion on the issue.

and it dismissed the reckless driving charge.

Sudhakar also introduced evidence that a substantially identical plea arrangement in which Sudhakar pled to reckless driving and the State dismissed the possession charge, would have dramatically altered Sudhakar's immigration consequences. An immigration law expert testified that possessing a controlled substance was a deportable offense, *see* 8 U.S.C. § 1227(a)(2)(B)(i), but reckless driving normally would not be, *cf. United States v. Villanueva-Diaz,* 634 F.3d 844, 847 (5th Cir. 2011) (Texas "felony driving while intoxicated" not a removable offense). Sudhakar's plea counsel admitted that, had he known of the immigration consequences that accompanied a plea to the possession charge, he would have sought a plea to the reckless driving charge instead. Counsel also opined that, in his experience, it would have been possible to secure such an alternative plea agreement. This evidence, viewed in the light most favorable to the court's ruling, demonstrates a reasonable probability that, if his plea counsel had competently advised him, Sudhakar would have accepted a plea that avoided immigration consequences and the result of the proceedings would have been different. *See Padilla*, 130 S. Ct. 1482; *Ex parte Wolf*, 296 S.W.3d at 170-71. We overrule issue three.

## B. Findings of Fact & Rulings of Law.

Having rejected the State's claims of substantive error, we turn to its procedural argument that the habeas court's order granting Sudhakar's application failed to satisfy Texas Code of Criminal Procedure requirements. The Code requires that such orders "include[e] findings of fact and rulings of law." Tex. Code Crim. Proc. Ann. art. 11.072 § 7(a) (West 2012). In issue four, the State argues that the habeas court's order lacks the required factual findings and that the grounds the court stated for its decision "are wholly conclusory, and contain no factual support." The order reads as follows:

### O R D E R

Came to be heard the foregoing Application and Motion, and it appears to the Court that the relief requested should be granted, and the plea agreement entered into by the Applicant/Defendant on or about October 8, 2009, under Cause No. 09-CCR-145198 should be set aside on the

9

following grounds:

1. The Applicant was not properly notified of the immigration consequences of his plea;
2. The Applicant did not fully understand the immigration consequences of his plea;
3. The Applicant's counsel did not properly advise Applicant regarding the immigration consequences of his plea; and
4. The Applicant's plea was therefore involuntary.

IT IS THEREFORE, ORDERED that the relief requested is GRANTED and the plea agreement is hereby SET ASIDE, and the Applicant's conviction is hereby VACATED.

The scope of the Code of Criminal Procedure's required findings and rulings cannot be reduced to a rigid formula, but instead depends upon whether the habeas court's order is "adequate to provide [us] with a basis upon which to review [its] application of the law to the facts." *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). For example, detailed findings are "especially helpful if the trial court rejects unrebutted testimony as incredible or unworthy of belief" because in such circumstances the appellate record often dictates a result contrary to that reached by the trial court. *Peterson*, 117 S.W.3d at 819. Similarly, when "witnesses testified to different versions of the facts of the case," fact findings may be necessary for appellate courts to determine which version the trial court credited. *State v. Votta*, 299 S.W.3d 130, 135-36 (Tex. Crim. App. 2009). Finally, the Code of Criminal Procedure requires detailed findings when "the habeas court's rulings are based on the court's independent knowledge of a [local court] rule . . . [or] other considerations not apparent from the record before us." *Ex parte Cherry*, 232 S.W.3d 305, 307 (Tex. App.—Beaumont 2007, pet. ref'd). In these situations, the gap between the record material and the ruling under review is so vast that deciding the appeal requires us to speculate about—rather than infer—the trial court's findings. *See Cullen*, 195 S.W.3d at 698-99.

On the other hand, when a habeas court's ruling requires it to apply a single legal theory to essentially unrebutted testimony, extensive findings and conclusions are unnecessary. In these cases, the limited nature of the arguments and facts presented

10

enables us to determine "what the [habeas] court's implied factual findings are" without resorting to speculation. *Wheeler*, 203 S.W.3d at 324 n.23 (quotation omitted). When this determination is possible, "as a matter of law, [we] defer to the trial court's implied factual findings that are supported by the record." *Id.* at 325-26.

Here, Sudhakar's habeas corpus petition presented a single, discrete issue for the habeas court's consideration, and we believe the court's findings suffice for us to review its decision. Sudhakar's argument was simple: (1) his plea was ineffectively counseled under *Padilla v. Kentucky*, and (2) he suffered prejudice because, but for counsel's error, he would not have entered into the subject plea agreement, but rather would have negotiated a different plea agreement that would not affect his immigration status. This case does not require us to "make assumptions (or outright guesses) about the trial court's ruling" because the ruling's basis is manifestly apparent from the record before us, which includes the parties' arguments and the undisputed evidence presented to the habeas court. *Cullen*, 195 S.W.3d at 698. Because the habeas court's findings are "adequate to provide [us] with a basis upon which to review [its] application of the law to the facts," we overrule the State's issue four. *Id.* at 699.

### CONCLUSION

The habeas court did not abuse its discretion by vacating Sudhakar's plea as ineffectively counseled and involuntary, and its order complied with the Texas Code of Criminal Procedure. We therefore affirm.

/s/     Margaret Garner Mirabal
        Senior Justice


Panel consists of Justices Frost, McCally, and Mirabal.[4]
Do Not Publish — Tex. R. App. P. 47.2(b).

_____

[4] Senior Justice Margaret Garner Mirabal sitting by assignment.

11