Evelyn V. Keyes, Justice *242 Appellant, Jose Luis Aguilera, appeals from the denial of his post-conviction application for a writ of habeas corpus filed under Texas Code of Criminal Procedure art. 11.09. Aguilera, in his sole issue, contends that his plea counsel's failure to provide accurate immigration advice, required under Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), resulted in ineffective assistance of counsel and rendered his 2013 guilty plea involuntary. We affirm.
Background
Aguilera, a Mexican national and lawful permanent resident of the United States, was charged in 2009 with the Class A misdemeanor offenses of assault of a family member, under trial court cause number 1598995, and interfering with a 9-1-1 call, under trial court cause number 1598996, involving his then wife, Amanda Aguilera. After the incident, Aguilera fled the scene and was not arrested until November 25, 2012.
Following his arrest, Aguilera's sister contacted Cesar Escalante, an attorney, on November 26, 2012, to solicit legal assistance on behalf of Aguilera. Escalante's employee took the call and wrote "resident" on the intake message, indicating that the client was a lawful permanent resident as opposed to a citizen. Escalante testified that he and Aguilera met on or around November 30, 2012, and spoke only in Spanish. During the initial meeting, Escalante discussed the facts surrounding the alleged assault and 9-1-1 call-interference charges with Aguilera. When Escalante told Aguilera that he needed to contact his ex-wife, Aguilera told him not to contact Amanda because they were not getting along, that they had gotten divorced because of this incident, and that she wanted him to go to jail.
During this meeting, Aguilera and Escalante discussed the possibility of pursuing deferred adjudication with a guilty plea. Escalante testified that he informed Aguilera about the immigration consequences of this course of action, including the potential for deportation, exclusion, denial of re-entry, and denial of citizenship. He also stated that he suggested that Aguilera contact an immigration attorney to assist with any immigration ramifications stemming from the case. Escalante further testified that he also offered to refer Aguilera to an immigration lawyer. Escalante confirmed that he had made it clear to Aguilera that a deferred adjudication probation would be the same as a conviction for immigration purposes.
In contrast, Aguilera claims that this part of the conversation never took place, that he never told Escalante not to contact his ex-wife, and that Escalante neither mentioned any immigration consequences nor advised him to contact an immigration attorney. According to Aguilera, Escalante only mentioned that pleading guilty would result in no jail time.
On December 6, 2012, the State offered a plea bargain in Aguilera's case to Escalante, including one year of deferred adjudication for the assault charge, and dismissing the interference charge. Escalante testified that he discussed the plea deal with Aguilera on that same day, and again admonished his client about potential immigration *243 issues that could result. Escalante noted that upon presentation with the plea deal, Aguilera indicated that he wanted to plead guilty. Neither Escalante nor the State ever spoke to Aguilera's ex-wife at any point. Escalante reset the case.
On January 8, 2013, Aguilera appeared in court where he formally pleaded guilty to the assault charge, in exchange for placement on deferred adjudication for one year and an affirmative finding of family violence. On the plea paperwork, Escalante did not sign off as interpreter, despite the fact that he had communicated with his client exclusively in Spanish, and the presiding judge failed to check a box indicating that there had been immigration admonishments made. However, Escalante testified that the judge did so admonish Aguilera in court and that Escalante had interpreted them for Aguilera. Additionally, the acknowledgment regarding immigration consequences of a guilty plea was not included with the plea paperwork. Nevertheless, Escalante noted that he had gone over the immigration consequences again in court before the plea hearing with Aguilera and advised him to consult with an immigration attorney because Aguilera would be subject to deportation, to which Aguilera replied that he understood and that he would do so later.
After signing the plea paperwork and at some point into the one-year deferred adjudication period, Aguilera called Escalante when he learned that the State changed the stipulations of the plea agreement, replacing anger management classes with domestic violence counseling. Escalante then noted that Aguilera contacted him later after that call, requesting a referral to an immigration attorney, and Escalante gave it to him. Escalante testified that even though he had advised Aguilera throughout his representation to contact an immigration attorney, Aguilera had waited until after the plea to request a referral because he had told Escalante that he would deal with it later.
On June 27, 2016, Aguilera filed an application for a writ of habeas corpus under Texas Code of Criminal Procedure article 11.09 through his habeas counsel, David Breston. In his application, Aguilera alleged only that Escalante had provided ineffective assistance by neglecting to advise him about the immigration consequences of his guilty plea to assault of a family member under Padilla , thus, rendering his plea involuntary. Aguilera's habeas counsel also filed a memorandum of law stating that, while his client had completed his term of deferred adjudication and was not presently confined or being deported, Aguilera was suffering collateral consequences from his guilty plea because it subjected him to removal proceedings if he traveled outside the country and returned and because it frustrated his attempt at naturalization. Escalante submitted an affidavit stating that he had, in fact, issued appropriate verbal admonishments to Aguilera surrounding the immigration consequences of his guilty plea.
The Habeas Court's Hearing and Findings of Fact and Conclusions of Law
The habeas court held a hearing on Aguilera's writ, starting on August 24, 2016, with the above background testimony presented by Aguilera and Escalante. Aguilera testified that had he been properly admonished of the immigration consequences of pursuing deferred adjudication and pleading guilty, he would have elected to go to trial.
At the hearing, Aguilera's habeas counsel, Breston, also attempted to embark on lines of questioning about areas other than immigration admonishments in which Escalante allegedly provided ineffective assistance to Aguilera but that were not raised in his habeas application. Breston attempted *244 to question Escalante about why he did not reach out to Aguilera's ex-wife Amanda, the victim of the alleged assault, or complete additional discovery. The habeas court stated that these lines of questioning were irrelevant to the matter at hand. The habeas court found that Aguilera had not proven, by a preponderance of the evidence, that Escalante was ineffective in regard to the advice he gave Aguilera about immigration consequences and, thus, denied the writ.
After the habeas court orally denied Aguilera's writ, it ordered the State to submit proposed findings of fact and conclusions of law. The court signed an order denying Aguilera's habeas application, and Aguilera filed a notice of appeal. The State also proposed the following findings of fact and conclusions of law:
Findings of Fact
1. The Court finds that the applicant was sentenced to one (1) year deferred adjudication for the misdemeanor offense of assault [of a] family member out of County Criminal Court at Law No[.] 13, Harris County, Texas, on January 8, 2013, in cause no. 1598995.
2. The Court finds that the applicant's period of community supervision expired, the proceedings against the applicant were dismissed, and the applicant was discharged from community supervision on February 12, 2014.
3. The Court finds that the applicant did not file a direct appeal in the instant case.
4. The Court finds that the applicant filed an application for writ of habeas corpus, pursuant to Tex. Code Crim. Pro. art. 11.09, in cause no. 1598995-A on June 27, 2016.
5. The Court finds that the applicant timely filed the instant application.
6. The Court finds that this court denied the application for writ of habeas corpus on September 29, 2016, after a hearing.
7. The Court finds trial counsel, Caesar Escalante, to be credible.
8. The Court finds that, in the instant case, Caesar Escalante properly advised the applicant about the immigration consequences of pleading guilty to assault [of a] family member as required under Padilla v[.] Kentuc[k]y, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).
9. The Court finds that Caesar Escalante advised the applicant that a plea of guilty would result in deportation, exclusion from admission to this country, or denial of naturalization under federal law.
10. The Court finds that Caesar Escalante referred the applicant to an immigration attorney.
11. The Court finds that testimony during the hearing on the instant application has undermined the credibility of applicant's claims.
12. The Court finds that the applicant's assertion that he would have insisted on going to trial had he known about the immigration consequences was not credible.
13. The Court finds that the applicant fails to corroborate his claim that he is confined as a result of his sentence.
14. The Court finds that the applicant's claim of ineffective assistance of counsel as it relates to Caesar Escalante's investigation of the instant case was not properly plead[ed] and does not make any finding on that issue.
Conclusions of Law *245 1. The applicant fails to meet his burden under art 11.09 to prove by a preponderance of the evidence that Caesar Escalante's representation fell below an objective standard of reasonableness and that the applicant was prejudiced as a result. Tex[.] Code Crim. Proc[.] art[.] 11.09, Strickland v. Washington , 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) [.]
2. The applicant fails to show that his plea was not knowingly and voluntary made. Boykin v[.] Alabama , 395 U.S 238, 242-244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) [.]
3. In all things, applicant fails to show that he is being improperly confined and/or entitled to a new trial based on ineffective assistance of counsel as it relates to Caesar Escalante's advice about the immigration consequences of a guilty plea to assault [of a] family member.
The habeas court adopted the State's proposed findings and conclusions by signing the order denying the application, concluding that Aguilera had failed to meet his burden to prove by a preponderance of the evidence that Escalante's representation fell below the objective standard reasonableness and that Aguilera was prejudiced as a result, as required by Strickland . This appeal followed.
DISCUSSION
Aguilera contends that the habeas court erred by ruling that he had failed to meet his burden under Strickland. Aguilera argues that, because he only had to fulfill a standard of a preponderance of the evidence, the habeas court erred in finding Escalante's testimony more credible than his. He also suggests that even if Escalante had, as he testified, admonished Aguilera of the immigration consequences of the plea, he still failed in his duty, because Padilla requires specific delineation of those consequences, therefore requiring Escalante to inform Aguilera that his deportation would be presumptively mandatory. Aguilera also argues that, under Padilla , trial counsel is also required to advise a client about whether or not a plea would be in his best interest, which Escalante allegedly did not. Aguilera also asserts that if he had been advised about the immigration ramifications of his plea, he would not have accepted the plea bargain. Finally, Aguilera argues that other aspects of Escalante's performance as counsel, including allegedly deficient advice and poorly or insufficiently-conducted investigation should have been examined in the hearing as well.
The State responded by arguing that Escalante's legal assistance and advice was not unreasonable. It explained that in his affidavit, Escalante stated that he had told Aguilera to retain an immigration attorney and that there would be immigration consequences as a result of this plea. Furthermore, the State argued that rejecting the plea would not necessarily have been in Aguilera's best interest, and so Escalante's advice was not deficient in that regard either. The State then asserted that because Aguilera's habeas application only had mentioned the Padilla immigration claim as a ground for relief, the trial court was correct in limiting Breston's questioning to the issue of whether or not Escalante had appropriately advised Aguilera of the immigration consequences of his guilty plea.
A. Standard of Review
A defendant convicted of a misdemeanor offense may attack the validity of the conviction by way of habeas corpus if he is either (1) confined or restrained as a result of a misdemeanor charge or conviction, *246 or (2) is no longer confined, but is subject to collateral legal consequences resulting from the conviction. State v. Collazo , 264 S.W.3d 121, 125-26 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd) (citing TEX. CONST. art. V, § 8 ; TEX. CODE CRIM. PROC. ANN. art. 11.09, 11.21, 11.22 (West 2005) ). Although Aguilera states that he is not confined, because he claims that he is subject to collateral legal consequences due to his guilty plea, we have jurisdiction to review the denial of his article 11.09 habeas application.
An applicant seeking habeas corpus relief based on an involuntary guilty plea must prove his claim by a preponderance of the evidence. Kniatt v. State , 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). When reviewing the trial court's ruling on a habeas corpus application, we view the facts in the light most favorable to the trial court's ruling and will uphold it absent an abuse of discretion. Ex parte Duque , No. 01-15-00014-CR, 540 S.W.3d 136, 145, 2017 WL 4067110, at *7 (Tex. App.-Houston [1st Dist.] Sept. 14, 2017, pet. filed) (citing Kniatt , 206 S.W.3d at 664 ). A trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." Id. (citing Bigon v. State , 252 S.W.3d 360, 367 (Tex. Crim. App. 2008) ).
Our review of a trial court's habeas corpus ruling should be based upon the court's application of the law to the facts. Collazo , 264 S.W.3d at 126 (citing Ex parte Cherry , 232 S.W.3d 305, 307 (Tex. App.-Beaumont 2007, pet. ref'd) ). In reviewing the trial court's ruling, we view the facts in the light most favorable to the ruling, and we afford almost total deference to the trial court's determination of historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility. Id. (citing Guzman v. State , 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) ). We afford the same amount of deference to the trial court's rulings on "application of law to fact questions" that involve an evaluation of credibility. Id. If resolution of those ultimate questions turns on an application of legal standards, we review those determinations de novo. Id.
Accordingly, we must afford almost total deference to the habeas court's factual findings when those findings are supported by the record. See Ex parte Duque , 540 S.W.3d at 145, 2017 WL 4067110, at *7 (citing Ex parte Torres , 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) ). "We similarly defer to any implied findings and conclusions supported by the record." Id. (internal quotation marks and citation omitted). However, we review de novo mixed questions of law and fact that do not depend upon credibility and demeanor. See ids="6809032" index="29" url="https://cite.case.law/sw3d/483/35/#p43">id.
For example, while we give deference to any underlying historical fact determinations made by the habeas court, we review the ultimate question of prejudice under Strickland de novo. See Johnson v. State , 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) ; Ex parte Murillo , 389 S.W.3d 922, 927 (Tex. App.-Houston [14th Dist.] 2013, no pet.). Thus, to be entitled to relief, appellant was required to show by a preponderance of the evidence that (1) trial counsel's performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland , 466 U.S. at 687-88, 694, 104 S.Ct. at 2064, 2068.
B. Applicable Law
The two-pronged Strickland test applies to challenges to guilty pleas, such as the one in the present case, premised on ineffective assistance of counsel. See *247 Ex parte Obi , 446 S.W.3d 590, 596 (Tex. App.-Houston [1st Dist.] 2014, pet. ref'd) (citing Hill v. Lockhart , 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) ).
In Padilla , the U.S. Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. 559 U.S. at 374, 130 S.Ct. at 1486. Counsel's performance is deficient if counsel fails to advise a noncitizen client with "accurate legal advice about the 'truly clear' consequences of a plea of guilty to an offense that, as a matter of law, renders him 'subject to automatic deportation.' " Id. at 360, 369, 130 S.Ct. at 1473 ; Ex parte Torres , 483 S.W.3d at 46. "A failure by counsel to affirmatively and correctly advise a defendant regarding the clear deportation consequences of his plea will render counsel's performance constitutionally deficient, thereby satisfying the first Strickland prong." Ex parte Duque , --- S.W.3d at ----, 2017 WL 4067110, at *8 (citing Padilla , 559 U.S. at 369, 374, 130 S.Ct. at 1483, 1486 ).
As for the second Strickland prong, the Court of Criminal Appeals recently held,
"that the proper standard for determining prejudice is the one set forth in Hill , which requires an applicant to show a reasonable probability that counsel's errors affected the outcome of the plea proceedings, in the sense that, but for counsel's errors, the applicant would have rejected the plea bargain and instead pursued a trial."
Ex parte Torres , 483 S.W.3d at 46 (citing Hill , 474 U.S. at 59, 106 S.Ct. at 370 ); see Ex parte Duque , --- S.W.3d at ----, 2017 WL 4067110, at *8. Similarly, the U.S. Supreme Court recently held that the Hill standard is the proper test for prejudice under Padilla . See Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017).
As part of this Hill prejudice standard, "an applicant who demonstrates deficient performance would not automatically be entitled to relief, but instead would be required to convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Ex parte Duque , --- S.W.3d at ----, 2017 WL 4067110, at *8 (quoting Ex parte Torres , 483 S.W.3d at 48 ) (internal quotation marks and citation omitted). Some non-exhaustive factors to consider in conducting this analysis include "the evidence supporting an applicant's assertions, the likelihood of his success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments." Id. (quoting Ex parte Torres , 483 S.W.3d at 48 ) (citation omitted).
However, the Ex parte Torres court cautioned that, "to show that a decision to reject the plea bargain would have been rational under the circumstances, it is not dispositive that an applicant show that he would have received a more favorable disposition had he gone to trial." Id. (quoting Ex parte Torres , 483 S.W.3d at 48 ) (internal quotation marks and citation omitted). "Moreover, as Padilla recognized, an alien defendant might rationally be more concerned with removal than with a term of imprisonment." Ex parte Torres , 483 S.W.3d at 48 (internal quotation marks and citations omitted). "Thus, where the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice." Id. at 48-49 (citation omitted).
" 'In the Padilla context, when the prejudice prong of the Strickland test *248 is dispositive, we need address only that prong on appeal.' " Ex parte Obi , 446 S.W.3d at 596 (quoting Ex parte Murillo , 389 S.W.3d at 927 ). We make the prejudice inquiry on a case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure. Id. (citation omitted). " '[I]t is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second Strickland prong.' " Id. (quoting Ex parte Murillo , 389 S.W.3d at 927 ).
C. Analysis
Aguilera contends that the habeas court erred in denying him relief because Escalante failed to advise him that, even though his charge would be dismissed upon completing his deferred adjudication probation, his guilty plea to family assault was a conviction for immigration purposes and it was an offense that made him subject to automatic deportation, as required by Padilla . Aguilera also asserts that he was prejudiced because he would have insisted on going to trial had he been aware of the immigration consequences of his guilty plea. On the contrary, the State contends that Escalante had provided adequate assistance by informing Aguilera that he would be subject to deportation after his guilty plea to assault on a family member, that he should contact an immigration attorney because he would be deported, and that, in any event, he failed to establish prejudice.
1. Performance Prong
With respect to the first Strickland prong-performance-the habeas court found that Escalante was "credible" and had "properly advised [Aguilera] about the immigration consequences of pleading guilty to assault [of a] family member as required under Padilla." The habeas court further found that Escalante had "advised [Aguilera] that a plea of guilty would result in deportation, exclusion from admission to this country, or denial of naturalization under federal law" and that "Escalante [had] referred [Aguilera] to an immigration attorney." By contrast, the habeas court found that Aguilera's "testimony during the hearing on the instant application has undermined the credibility of [his] claims." As noted above, we must afford almost total deference to the habeas court's determination of historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility, as they are here. See Guzman , 955 S.W.2d at 89. Thus, the habeas court's finding that Aguilera failed to establish that Escalante's performance was deficient is supported by Escalante's testimony at the writ hearing.
2. Prejudice Prong
However, under Ex parte Torres , it may not be clear from the record whether Escalante's advice to Aguilera that his guilty plea would result in deportation, but also referring him to an immigration attorney, "fell short of Padilla 's requirement that counsel give clear and accurate advice regarding the 'presumptively mandatory' deportation consequence of his guilty plea under these circumstances." Ex parte Torres , 483 S.W.3d at 46 (finding that, by advising applicant to "consult with an immigration attorney" because of "possibility of immigration consequences," trial counsel failed to satisfy duties under Padilla ) (citations omitted). In any event, even assuming arguendo that Aguilera has shown that Escalante's performance fell below Padilla 's"presumptively mandatory" requirement, the State also argues that Aguilera failed to establish prejudice, and we agree.
As noted above, " '[i]n the Padilla context, when the prejudice prong of the *249 Strickland test is dispositive, we need address only that prong on appeal.' " Ex parte Obi , 446 S.W.3d at 596 (internal quotation marks and citation omitted). "The central question under the second [ Strickland ] prong is whether it would have been rational under the circumstances for the applicant to reject the plea bargain." Id. (citations omitted). We examine whether Aguilera's insistence on a trial would have been rational under the circumstances in light of the following factors: (1) whether the applicant had placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it; (2) whether there is evidence of the applicant's guilt, (3) whether the applicant had any factual or legal defenses, and (4) how the plea deal compared to the penalties risked at trial. See Ex parte Torres , 483 S.W.3d at 48-49 ; Ex parte Obi , 446 S.W.3d at 597 (citation omitted).
With respect to the first factor-whether the applicant had placed a particular emphasis on immigration consequences-courts consider whether the applicant presented evidence indicating that the immigration consequences of his plea were his paramount concern. See Ex parte Obi , 446 S.W.3d at 598. " 'An applicant's failure to express concerns about immigration consequences after receiving repeated warnings' weighs against finding prejudice.' " Id. (quoting Ex parte Murillo , 389 S.W.3d at 930 ). Although Aguilera stated in his affidavit and at the writ hearing that he would have insisted on going to trial if he knew the immigration consequences of his guilty plea, this testimony was self-serving and made after-the-fact.
By contrast, Escalante testified that, after he had discussed the plea deal with Aguilera when the State offered it in 2012, and again admonished Aguilera of the potential immigration issues that could result, Aguilera wanted to plead guilty. Escalante later testified that, even after he advised Aguilera again in court before the January 2013 plea hearing of the immigration consequences and advised him that he should consult with an immigration attorney, Aguilera replied that he understood and would do so later but did not change his plea. Thus, there was no evidence that Aguilera had expressed any immigration concerns to Escalante before pleading guilty, despite his receiving multiple warnings from Escalante. See ids="7096005" index="74" url="https://cite.case.law/sw3d/389/922/#p927">id.
Moreover, although Aguilera and Escalante disputed at the writ hearing whether Escalante had properly advised Aguilera about the effect of a guilty plea on his immigration status, the habeas court found Escalante's testimony to be credible. Specifically, the habeas court found that Escalante had properly advised Aguilera about the immigration consequences of pleading guilty to assault of a family member, as required under Padilla , which would result in deportation, exclusion from admission, or denial of naturalization. The habeas court also found that Escalante had advised Aguilera to consult with an immigration attorney. The Court of Criminal Appeals in Ex parte Torres held that when the appellant had "disregarded counsel's advice to seek counsel from an immigration attorney for specific information about how his residency status would be impacted by his plea," the appellant's failure to contact an immigration attorney supported "a conclusion that appellant did not place any special emphasis on avoiding deportation consequences as a result of his plea." 483 S.W.3d at 50.
Here, the habeas court found that testimony at the writ hearing undermined the credibility of Aguilera's claims. The habeas court found that Aguilera's "assertion that he would have insisted on going to trial had he known about the immigration consequences was not credible." Thus, the habeas *250 court did not credit Aguilera's self-serving testimony and, given the conflicting evidence, was free to disregard it. See Ex parte Obi , 446 S.W.3d at 599 (citation omitted). As noted above, we must defer to the habeas court's finding on these issues, as its resolution turns on an evaluation of the witnesses' credibility and demeanor. See Ex parte Amezquita , 223 S.W.3d 363, 367 (Tex Crim. App. 2006). Therefore, this first factor weighs against a finding of prejudice.
As for the second factor-evidence of guilt-the habeas court found that Aguilera's "claim of ineffective assistance of counsel as it relates to Caesar Escalante's investigation of the instant case was not properly plead[ed]" and thus "d[id] not make any finding on that issue." Thus, this second factor does not weigh strongly in favor of or against a finding of prejudice.
With respect to the third factor, we consider whether Aguilera had any factual or legal defense to the charged offenses. See Ex parte Obi , 446 S.W.3d at 598 (citations omitted). Aguilera did not raise any allegations in his affidavit regarding whether he thought he had a defense, other than to state that his family had hired Escalante to represent him because he wanted to go to trial. The habeas court, at the writ hearing, did not permit Aguilera's counsel to cross-examine Escalante regarding why he did not reach out to Aguilera's ex-wife or complete additional discovery, as it found those questions irrelevant to the habeas application. However, Escalante testified that Aguilera told him not to contact Amanda, and Escalante had stated in his affidavit that Aguilera had told him that it would not be in Aguilera's best interest for Escalante to contact Amanda because they were not on good terms, they had, in fact, divorced because of this assault, and that she wanted him to go to jail.
Although Aguilera testified that he had never told Escalante not to contact Amanda, the habeas court found that Escalante was credible and Aguilera was not. As noted above, we must defer to the habeas court's factual findings that are based on credibility. See Ex parte Amezquita , 223 S.W.3d at 367. The habeas court also concluded that Aguilera had failed to show that his plea was not knowing and voluntary. "We similarly defer to any implied findings and conclusions supported by the record." Ex parte Duque , 540 S.W.3d at 145, 2017 WL 4067110, at *7. Thus, this third factor weighs strongly against a finding of prejudice. See Ex parte Obi , 446 S.W.3d at 598.
Finally, with respect to the fourth factor-how the plea deal compared to the penalties risked at trial-we consider three additional subfactors: (1) evidence concerning the likelihood of success at trial, (2) evidence presented by the applicant that some other plea deal would have helped him avoid negative immigration consequences, and (3) evidence presented by the applicant regarding the likelihood of obtaining probation if convicted at trial. See ids="6905591" index="83" url="https://cite.case.law/sw3d/446/590/#p596">id. at 599.
As noted above, Aguilera was charged in 2009 with the Class A misdemeanor offenses of assault of a family member and interference with a 9-1-1 call. See TEX. PENAL CODE ANN. §§ 22.01(a)(1), 42.062(a), (c) (West 2016). For the first risk subfactor, the habeas court did not make a finding as to Escalante's investigation of the case. Thus, the evidence concerning the likelihood of success at trial does not weigh strongly in favor of or against a finding of prejudice. See Ex parte Obi , 446 S.W.3d at 600.
With respect to the second risk subfactor, Aguilera did not present any evidence at the writ hearing or in his habeas application *251 that some other plea deal would have helped him avoid negative immigration consequences. If convicted after trial of the Class A misdemeanor offenses of assault of a family member and interference with a 9-1-1 call, Aguilera faced a maximum of up to one year in jail and up to a $4,000.00 fine for each of these charges. See TEX. PENAL CODE ANN. § 12.21 (West 2016). The terms of Aguilera's favorable plea bargain included no jail time for the assault of a family member Class A misdemeanor charge, in exchange for the State dismissing the other Class A misdemeanor charge of interference with a 9-1-1 call and the trial court placing him on a one-year deferred adjudication period and assessing a $200.00 fine. Therefore, because Aguilera bore the burden of presenting evidence of some other plea deal being offered which would have helped him avoid negative immigration consequences, and he did not do so, this second subfactor weighs against a finding of prejudice. See Ex parte Obi , 446 S.W.3d at 600.
Similarly, as for the third, and final, risk subfactor, the likelihood of obtaining probation if convicted after trial, while Aguilera may have been eligible for probation if convicted after trial of one or both charges, he failed to present any such evidence that probation was likely. See ids="6905591" index="86" url="https://cite.case.law/sw3d/446/590/#p596">id. More importantly, if Aguilera were convicted at trial of at least the assault charge, he faced being deportable or having his naturalization application denied regardless of whether he received probation. See ids="6905591" index="87" url="https://cite.case.law/sw3d/446/590/#p596">id. Because Aguilera bore the burden of presenting evidence of the likelihood of obtaining probation if convicted at trial, and he did not do so, this third subfactor weighs against a finding of prejudice. Thus, we conclude that the penalties risked at trial, where Aguilera faced a maximum of one year in jail and a $4,000 fine on both of his charges, weigh against finding that Aguilera was prejudiced by his plea deal where he avoided any jail time and only paid a $200 fine. See ids="6905591" index="88" url="https://cite.case.law/sw3d/446/590/#p596">id. (citations omitted).
Consequently, after considering these four factors and giving appropriate deference to the trial court's findings of fact that Aguilera's plea counsel, Escalante, was credible and that Aguilera was not credible, we find that the trial court properly (1) rejected Aguilera's self-serving claim that he would have insisted on going to trial had he known about the immigration consequences of pleading guilty to assault of a family member; and (2) concluded that it would not have been rational for Aguilera to reject a plea deal under the circumstances. See ids="6905591" index="89" url="https://cite.case.law/sw3d/446/590/#p596">id. Therefore, we hold that the trial court did not err in concluding that Aguilera failed to carry his burden of showing that, with respect to the second prong of Strickland , but for the allegedly-deficient conduct by plea counsel, there was a reasonable probability that he would have gone to trial. See ids="6905591" index="90" url="https://cite.case.law/sw3d/446/590/#p596">id. (citing, inter alia , Ex parte Murillo , 389 S.W.3d at 931-32 ("Aside from applicant's own self-serving statement that he would have insisted his counsel take his case to trial had he known he would be deported, he presented no other evidence corroborating his position that it would have been rational to reject a plea deal under the circumstances.")); see also Ex parte Duque , 540 S.W.3d at 151, 2017 WL 4067110, at *12 (holding that, with respect to second prong of Strickland , because "plea bargain here allowed Appellant to entirely avoid jail time, including a possible 10-year prison sentence," and record did not contain "substantial and uncontroverted evidence" that Appellant would have not accepted plea had he known that he would be deported and, instead, record supported habeas court's implied finding that he failed to prove that decision "to reject the plea bargain would have been *252 rational under the circumstances") (internal quotation marks and citations omitted).
Accordingly, we hold that the trial court acted within its discretion in denying Aguilera habeas relief. We overrule his sole issue.
Conclusion
We affirm the order of the trial court denying habeas relief.