**Affirmed and Majority and Concurring Opinions filed July 12, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00112-CR

**JAMIE GREEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1444798**

## MAJORITY OPINION

We consider two issues in this appeal from a conviction for indecency with a child: (1) whether trial counsel was constitutionally ineffective for failing to develop and present mitigating evidence, and (2) whether the trial court abused its discretion by denying a motion for mistrial during the punishment phase of trial. Finding no merit to either challenge, we overrule both issues and affirm the trial court's judgment.

## BACKGROUND

The offense in this case stemmed from an accusation that appellant inappropriately touched his nine-year-old niece. After a jury convicted appellant of that offense, the trial proceeded to the punishment phase, which is the focus of both issues in this appeal.

The State called two witnesses during the punishment phase. The first witness was a fingerprint analyst who testified about appellant's criminal record. The fingerprint analyst established that when appellant was a teenager, he was twice adjudicated delinquent for committing aggravated sexual assault. The fingerprint analyst further established that when appellant was an adult, he was convicted for failing to register as a sex offender.

The second witness was a victim in one of the extraneous sexual assaults. She testified that appellant, a neighbor of hers, forced his way into her home and demanded her car keys. She told appellant that she did not have any car keys because she was epileptic and her license had been revoked. She then explained that appellant became angry and raped her at knifepoint. Since the rape, she claimed that she is not very trusting of others, and that she feels insecure when not in the presence of her husband or one of her grown sons.

The defense did not call any witnesses in mitigation, and the jury assessed appellant's punishment at the maximum term of twenty years' imprisonment.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant was represented at trial by two different lawyers. His counsel of record was Cynthia Cline, but because she suffered from a chronic ear and throat infection, her role during the trial came to be very limited. Cline enlisted the help of

a colleague, Tom Moran, who took over the primary responsibility of appellant's defense.

After the trial was over, a new lawyer was appointed for purposes of appeal. That lawyer filed a motion for new trial, alleging that appellant's trial counsel had been ineffective by not conducting a more thorough investigation and by not presenting any mitigating evidence.

A hearing was held to consider the merits of the motion. Cline did not appear at that hearing, but she submitted a lengthy affidavit, in which she detailed her trial strategy and the course of her representation. Cline explained that she reached out to the outcry witness (appellant's sister and the complainant's mother), but the outcry witness refused to provide information about other persons who may have been witnesses of the alleged offense.

Cline also said that she tried to contact appellant's mother at appellant's request, but the phone number provided by appellant was incorrect. Cline explained that when the correct phone number was later provided, appellant's mother would not cooperate: "She made it perfectly clear to me that she did not want to get between her son and her granddaughter. . . . She told me not to call back."

Cline also described how she tried to hire an expert witness who was a licensed psychologist and sex offender treatment provider, but the expert refused to accept the case for the amount of compensation that was available to her. The expert provided Cline with a list of other possible experts, but they also declined Cline's requests.

Cline testified that she had a "rocky" relationship with appellant: "He often would curse at me and insult me. At times he would simply refuse to talk to me." Cline continued:

Numerous times I asked Mr. Green for witnesses who could provide mitigating evidence. He refused to do so, saying he would not be convicted. Mr. Green specifically told me not to prepare witnesses for mitigation. He told me that if I did my job, there would not be a conviction. When I said, "But what if you lose," he told me to get the fuck out of his face and started beating on the door of the interview room in the jail.

After the guilt phase of trial had ended but before the punishment phase had begun, Cline asked appellant if he wanted to take the stand and put on his own mitigating evidence. Cline said that appellant refused. She then offered to move for a continuance to get other witnesses for mitigation. But again, appellant refused.

Cline's investigator submitted an affidavit. He testified that when he reached out to appellant's mother, she was "standoffish," although she indicated that a pastor was willing to appear in court for appellant. The investigator said that he was given two other names of potential defense witnesses, but he was never able to contact those witnesses because their names were common and he did not have their addresses or telephone numbers. Appellant indicated that the witnesses may have been in jail, but the investigator testified that he searched the jail records and could not find them.

Moran was the only witness to provide live testimony at the hearing. He testified that he became involved in the case when Cline asked that he join her on her jail visits because appellant had previously been abusive towards her. Moran accepted the case knowing that he would have no mitigation evidence to present at trial. Moran testified that he would have preferred to have had a mitigation witness, but the only potential witness known to him was appellant's mother, and Moran did not believe that she would be very effective because she had already expressed a desire to not be involved in the case.

4

The defense produced medical records showing that appellant suffered from depression when he was in prison and that he had also attempted suicide. In addition to these records, the defense submitted several affidavits. Appellant's mother testified in her affidavit that she wanted to testify on behalf of appellant, but his lawyer would not return her calls (controverting Cline's affidavit testimony). Appellant's mother explained that, had she been allowed to testify, she would have talked about how appellant was a "good kid" who was influenced by "much older boys who were doing very bad things." She would have also described how appellant was a good man because he went to church, he supported his family financially, and he helped his sister when she was sick.

Appellant's father provided similar affidavit testimony, saying that appellant's lawyers never contacted him. He said that he would have described appellant's difficult childhood—e.g., how appellant's stepfather smoked crack, and how appellant fell into the wrong crowd of older boys in the neighborhood. The father also spoke in general terms about appellant's character as an adult: "When he got out of prison, he was doing so good. He was working and going to church."

Appellant's pastor likewise testified that he was never contacted by appellant's lawyers. In his affidavit, the pastor said that he has known appellant since appellant was a child. The pastor also opined that appellant was "a respectable young man who was worthy of our trust"; that he was "courteous, polite, and helpful"; and that he was also seen as "a model member of the church."

At the end of the hearing, the trial court opined that even though the investigation was imperfect, it was still reasonable under the circumstances. The trial court further explained that "the Court is not of the opinion that the result would have changed by the jury at the punishment phase of the trial." Accordingly, the court denied the motion for new trial.

We review the trial court's ruling on a motion for new trial for an abuse of discretion. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by* Tex. R. App. P. 21.8(b); *Frangias v. State*, 413 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *See Charles*, 146 S.W.3d at 208. When deciding whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's ruling and defer to its credibility determinations. *Id.* Because we presume that the trial court implicitly made all reasonable factual findings that could have been made in support of its ruling, we will conclude that the trial court abused its discretion only if no reasonable view of the record could support its ruling. *Id.*

To prevail on his claim of ineffectiveness, appellant was required to show by a preponderance of the evidence that his trial lawyers' performance was deficient and that the deficient performance was so prejudicial that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Appellant argues that Cline and Moran were deficient because, as a result of their inadequate investigation, they did not present any mitigating evidence during the punishment phase of trial. Appellant's argument largely focuses on three separate claims: (1) his lawyers should have asked his mother, father, and pastor to testify; (2) his lawyers should have requested funds for the appointment of an expert witness; and (3) his lawyers should have offered into evidence his medical records, which showed, among other things, that he struggled with depression and suicidal thoughts.

For the sake of argument, we will assume without deciding that the performance of appellant's lawyers was deficient and proceed to an analysis of prejudice.

To establish prejudice, appellant had the burden of showing a reasonable probability that, but for his lawyers' deficient performance, the result of the proceeding would have been different. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Here, the trial court opined that the result of the proceeding would not have changed, even if appellant's lawyers had developed and presented mitigating evidence. Under our standard of review, we must uphold the trial court's ruling if it has any reasonable support in the record. For two independent bases, we conclude that it does.

First, as a matter of law, a defendant cannot show that he was prejudiced when he instructs his counsel not to offer any mitigating evidence. *See Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) ("The Court of Appeals first addressed the State's contention that Landrigan instructed his counsel not to offer any mitigating evidence. If Landrigan issued such an instruction, counsel's failure to investigate further could not have been prejudicial under *Strickland*."); *Bazan v. State*, 403 S.W.3d 8, 15 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). And here, Cline testified that appellant specifically told her "not to prepare witnesses for mitigation." Cline further added that, after the guilt phase of trial, appellant refused her offer to move for a continuance so that she might try to obtain witnesses in mitigation. We must credit this testimony because it supports the trial court's ruling.

Second, as a matter of fact, the omitted mitigating evidence was not very compelling. It merely established in the most general of terms that appellant fell into

7

the wrong crowd as a teenager; that he became depressed while in prison; and that since being released from prison, he had become a churchgoing man who supported his family. Even if that evidence were credible, it contrasted starkly with the emotional testimony of appellant's previous rape victim, which Moran described as "devastating to the defense." The trial court could have reasonably determined that the omitted evidence was not so compelling as to have had any effect on the jury's verdict. *Cf. Ex parte Martinez*, 195 S.W.3d 713, 730–31 (Tex. Crim. App. 2006) (holding that omitted evidence that the defendant had been sexually abused as a child was unlikely to have had any effect on the jury's verdict, given the seriousness of his crimes).

In his brief, appellant proposes a rule that a court cannot "speculate" that omitted mitigating evidence would not have led to a more favorable sentence, citing this court's decision in *Milburn v. State*, 15 S.W.3d 267 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). There is no such rule or holding in *Milburn*, and as demonstrated by *Martinez,* a court can determine that mitigating evidence would not have favorably influenced the jury even if it had been presented at trial. *See Martinez,* 195 S.W.3d at 730–31.

Even if we assumed that the performance of appellant's lawyers was deficient, the trial court could have reasonably determined that appellant did not carry his burden of showing that he was prejudiced. We therefore conclude that the trial court did not abuse its discretion by denying appellant's motion for new trial.

## MOTION FOR MISTRIAL

Appellant's next issue also arises out of the punishment phase of trial, specifically during the testimony of the victim from the extraneous sexual assault. After this witness described the facts of her sexual assault, the prosecutor asked her, "Knowing that this is an additional case that you're here for today"—referring to

8

appellant's most recent conviction for indecency with a child—"what do you think is the appropriate punishment?" The witness answered, "Life."

Appellant promptly objected "to any answer on what this witness thinks is an appropriate punishment." The trial court sustained the objection and, at appellant's request, instructed the jury to disregard the witness's answer. Appellant then moved for a mistrial, which the trial court denied.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). When deciding whether the trial court abused its discretion, we examine the particular facts of the case. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

Ordinarily, a prompt instruction to disregard will cure any error associated with an improper question and answer. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). A mistrial is required only if the improper question and answer are clearly prejudicial to the defendant and of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

Appellant does not identify how the improper question and answer were incurable in this case, other than to say that the witness was "somewhat elderly when she testified, making her . . . even more sympathetic as a witness." Appellant does not cite any authority for this proposition, and we are reluctant to accept that proposition in light of *Simpson v. State*, 119 S.W.3d 262 (Tex. Crim. App. 2003).

In that analogous case, the son of a capital murder victim testified in response to an improper question that he and his entire family unanimously agreed that the defendant should be sentenced to death. *Id.* at 271. The trial court instructed the jury to disregard the answer and denied a motion for mistrial. *Id.* The defendant was

9

ultimately sentenced to death, and on automatic appeal, the Court of Criminal Appeals held that the trial court did not abuse its discretion by denying the motion for mistrial, even though the witness was also sympathetic. *Id.* at 274. In making that decision, the Court referred to the "very substantial" evidence in support of the death penalty, including the defendant's violent past. *Id.* at 273. The Court also observed that the jury did not likely place much weight on the witness's answer because "jurors understand that the victim's family members will be emotional and therefore less objective about what punishment should be given." *Id.* at 274.

Similarly, by the time of the improper question and answer in this case, the jury had already heard aggravating evidence about appellant's past, which included two sexual assaults, as well as the current offense, which appellant committed shortly after being released from jail for failing to register as a sex offender. From that evidence, the jury could have reasonably determined that appellant was incapable of reform and deserving of a strong sentence. Also, the jury could have reasonably understood that the rape victim's answer was more emotional than objective, considering that her recommendation of life imprisonment was legally impossible for being outside the statutory limit.

Based on the foregoing, we cannot say that the improper question and answer were incurable. Accordingly, we conclude that the trial court did not abuse its discretion by denying the motion for mistrial.

**CONCLUSION**

The trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison. (Frost, C.J., concurring)
Publish — Tex. R. App. P. 47.2(b).