**Affirmed and Memorandum Opinion filed February 26, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00088-CR

**SENTHIL MANALAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 11
Harris County, Texas
Trial Court Cause No. 2061302**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Senthil Manalan guilty of misdemeanor assault. *See* Tex. Penal Code Ann. § 22.01(a) (Vernon Supp. 2018). The trial court sentenced appellant to a one-year confinement probated for two years and a $300 fine. Appellant timely appealed and asserts three issues challenging the trial court's final judgment. For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

Appellant and complainant are husband and wife, respectively. Appellant and complainant moved from India to the United States in 2013 for appellant's job.

Complainant called 9-1-1 on November 11, 2015, reporting that appellant had hit her repeatedly with a belt at the couple's apartment. The alleged assault and ensuing events described below are taken from witness testimony from appellant's January 2017 two-day trial.

Complainant testified that appellant hit her with a belt on November 11, 2015 because she "borrowed flip-flops from [her] friend[.]" Complainant testified that appellant hit her "a lot" on the arms, hands, and legs, and that appellant hit her once on the forehead. Complainant stated that she left the couple's apartment and called police "many times." Complainant waited near the apartment complex's leasing office until Houston Police Officer Ricardo Gonzalez arrived approximately four hours later. Complainant returned to the couple's apartment with Officer Gonzalez, but appellant was not at the apartment.

According to complainant, she had a friend take pictures of her injuries after Officer Gonzalez left. Five photographs of complainant were admitted into evidence; the photographs show red marks and bruising on complainant's upper arms and a red mark on her forehead. Complainant testified that the red marks were "belt marks."

While cross-examining complainant, appellant's trial counsel questioned her regarding an alleged assault that occurred the day before complainant called 9-1-1:

| | |
|---|---|
| TRIAL COUNSEL: | Were you beaten on November 10th? |
| COMPLAINANT: | Yes. |
| TRIAL COUNSEL: | Okay. And why didn't you call police on November 10th? |

2

COMPLAINANT: I don't — I don't want — my culture is not to call. Go be — that is not my culture. I'm giving every time chance to [sic] him to change.

Complainant acknowledged that she, appellant, and the couple's two children were preparing to return to India. At the time of trial, complainant was applying for a U visa "for people who claim to be the victims of domestic violence." Complainant acknowledged that, "if [she] cooperate[d] with law enforcement[,] that [she] can . . . get legal status in this country."

Officer Gonzalez, who responded to complainant's 9-1-1 call, testified that he saw "red marks" on complainant's forehead and arms when he met her at the apartment complex's leasing office. According to Officer Gonzalez, complainant told him she "didn't want to pursue charges against" appellant but wanted Officer Gonzalez to "explain to [appellant] that . . . he's not to hit [complainant] in America." Officer Gonzalez returned to the apartment with complainant, but appellant was not present. Officer Gonzalez completed his report; explained to complainant "what [she] need[ed] to do for follow up;" and transferred complainant's case to the Houston Police Department's family violence unit. Officer Gonzalez testified that complainant was "consistent in her story;" Officer Gonzalez did not "find [complainant] suspicious at all[.]"

While he was being cross-examined by appellant's trial counsel, Officer Gonzalez reviewed the photographs of complainant that had been admitted into evidence. Officer Gonzalez testified that the red mark he saw on complainant's forehead when he arrived at the apartment complex "was actually higher" than the mark shown in the photographs. In one of the photographs, complainant shows her upper left arm; reviewing this photograph, Officer Gonzalez testified that he did not see any injuries on complainant's upper left arm but recalled "some redness on

3

her forearms."

Officer Gail Sanchez, a detective with the Houston Police Department's family violence unit and the recipient of complainant's case, also testified at appellant's trial. Recalling her initial conversation with complainant, Officer Sanchez testified that complainant "wanted basically just to have an officer contact [appellant] and . . . have him not touch her anymore." Complainant later "changed her mind" and told Officer Sanchez that she "wanted to file the charges." Complainant provided Officer Sanchez a written statement regarding the alleged assault.

Officer Sanchez spoke to appellant by phone and scheduled an appointment for appellant to come in and "give [his] side of — of what had happened." Appellant did not attend the appointment with Officer Sanchez. Officer Sanchez presented complainant's case to the Harris County District Attorney's office; the District Attorney's office charged appellant with misdemeanor assault of a family member.

During cross-examination, Officer Sanchez acknowledged that complainant told her "she didn't want to be sent back to India with her children[.]" Officer Sanchez also testified that complainant "didn't want [appellant] deported." Officer Sanchez came to the conclusion that complainant "wanted [appellant] to spend one day in jail . . . but not get deported."

Devan Arangaramanujam, appellant's older brother, testified as a witness for the defense. Arangaramanujam recalled visiting appellant and complainant on November 14-15, 2017; Arangaramanujam stated that he did not "observe anything that would lead [him] to believe that [complainant had] been attacked with a belt." Arangaramanujam testified that complainant "asked to process a green card through [appellant] that way she can drop the charges . . . [and] stay a little longer.

4

Like, stay here in the United States." Appellant's trial counsel asked Arangaramanujam whether he "ha[d] an opinion as to whether [appellant] is peaceful and law abiding?" Arangaramanujam replied: "Yes. And he is a very gentle and passionate father, also."

During cross-examination, the State's prosecutor questioned Arangaramanujam with respect to his description of appellant as a "peaceful and loving man." The State introduced through Arangaramanujam Exhibits 9 and 10: Exhibit 9 is a screenshot from a Facebook page. On the page is a post from a profile named "Senthil Manalan;" next to the profile name is a small profile picture. The post contains the following poem:

**Love ur husband**

when he orders you to make tea or coffee.
He wants to feel fresh
to listen [to] your nonstop talks.

Love him
if he looks at all the beautiful females.
He is just checking that you are still the best.

Love him
if he criticize[s] your cooking . . .
He is still improving his taste

Love him
if he snores at night and disturbs your sleep.
He is trying to prove that he is the most relaxed person after being married to you

Love him
if he forgets to
give you a gift on your birthday
He is saving money for your future.

Love him . . .

Because . .
you don't have a choice . .
and
killing is a legal offense . . .!!!

Exhibit 10 appears to be a full-page version of the profile picture shown next to the profile name in Exhibit 9. On the top right corner of Exhibit 10 is the name "Senthil Manalan;" underneath the profile name are comments and "likes."

Reviewing Exhibit 10, Arangaramanujam responded "Yes" when asked: "[D]o you recognize the name on the Facebook page?" Arangaramanujam responded "Yes" when asked: "Do you — do you recognize the — the man in this picture?" Finally, Arangaramanujam answered "Yes" when asked: "[I]s the photo in State's Exhibit 10 your brother?" When asked if Exhibit 9 contained the "same Facebook page," Arangaramanujam said, "No. I'm not sure of that part." The trial court admitted Exhibits 9 and 10 into evidence over appellant's objections.

The jury returned a verdict finding appellant guilty of misdemeanor assault of a family member. The trial court signed a final judgment on January 25, 2017, and sentenced appellant to a one-year confinement probated for two years and a $300 fine. Appellant filed a motion for new trial, which the trial court denied. Appellant timely appealed.

**ANALYSIS**

Appellant raises three issues on appeal:[1]

1. The trial court erred in admitting Exhibits 9 and 10 because they were not properly authenticated.

2. The trial court erred by failing to grant appellant's motion for a mistrial after the State's prosecutor "made an improper racial and

---

[1] Appellant lists his issues in a different order in his brief's statement of issues than he does in the body of his brief. We address the issues in the order they are listed in the body of appellant's brief.

ethic appeal in his final argument."

3. Appellant's trial counsel rendered ineffective assistance by failing to inform appellant that "he would be subject to 'presumptively mandatory' deportation as an aggravated felon if he were to receive the maximum sentence."

We address these issues below.

## I. Admission of Exhibits 9 and 10

Challenging the trial court's admission of Exhibits 9 and 10, appellant asserts that the evidence "was not properly authenticated." The State argues that appellant waived this complaint by failing to raise it at trial.

To preserve a complaint for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. *See* Tex. R. App. P. 33.1(a); *Garza v. State*, 126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004). "There are two main purposes behind requiring a timely, specific objection: (1) to inform the judge of the basis of the objection and give . . . [the judge] the chance to make a ruling on it, and (2) to give opposing counsel the chance to remove the objection or provide other testimony." *Garza*, 126 S.W.3d at 82.

Appellant raised at trial the following objections with respect to Exhibits 9 and 10:

- The exhibits go "beyond the scope of any question" appellant's trial counsel asked Arangaramanujam or "any character trait that [appellant's counsel] elicited."

- The exhibits are not relevant to Arangaramanujam's description of appellant as "peaceful and law abiding." Appellant's trial counsel "didn't elicit the character traits that [appellant is] a nice husband."

- The exhibits do not "relate to the character trait of being passionate either."

7

- The exhibits' "connection to any relevant character trait . . . is not there. And even if it is there, it's just — it's so speculative, Judge. It's really prejudicial."

- The exhibits portray "a kind of tongue-in-cheek kind of joke thing that [appellant] posted on — on Facebook." The exhibits are "not something that [appellant] wrote himself."

- The exhibits are "really prejudicial" and "otherwise inadmissible."

- The "poem" shown on Exhibit 9 "relates to the Indian culture relationship between the husband and wife. Attacking a person for a cultural, religious, or racial trait violates due process of law, due course of law, [and] equal protection of law."

- "As to both [exhibits], a proper predicate hasn't been laid; and also it's improper to admit an underlying document like this for impeachment purposes. It's improper impeachment."

While making these objections, appellant's trial counsel did not dispute that appellant made the posting shown in Exhibit 9 and stated several times that appellant "posted" the poem. Appellant's trial counsel also stated:

> [Appellant] saw some thing somewhere on the internet, and he thought it was amusing. So he — so he reprinted [it] on his Facebook page.
>
>              \*           \*           \*
>
> I don't know if he printed it out, but he — he posted on his own Facebook page.

The trial court overruled appellant's objections to Exhibits 9 and 10.

Appellant raised at trial several objections challenging Exhibits 9 and 10; these objections primarily challenged the exhibits on grounds that they were not relevant to the character traits elicited during Arangaramanujam's direct examination. Appellant did not challenge Exhibits 9 and 10 on grounds of authentication. Because appellate did not raise his authentication challenge in the trial court, it is not preserved for appellate review. *See* Tex. R. App. P. 33.1(a);

*Garza*, 126 S.W.3d at 81-82.

Appellant summarily asserts that his trial counsel "objected that the proper predicate was not laid." But "[a]n objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error." *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *see also Beck v. State*, 719 S.W.2d 205, 214 (Tex. Crim. App. 1986); *Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985); *Edwards v. State*, 497 S.W.3d 147, 163 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *Young v. State*, 183 S.W.3d 699, 704-05 (Tex. App.—Tyler 2005, pet. ref'd); *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd.). Appellant's assertion that "a proper predicate hasn't been laid" does not preserve his authenticity challenge for appeal. *See Gregory*, 56 S.W.3d at 182.

Although a specific objection may not be required "as long as the court can understand from the context what the complaint is," the context surrounding appellant's "predicate" objection did not suggest that appellant intended to challenge the authenticity of Exhibits 9 and 10. *See Clark v. State*, 365 S.W.3d 333, 337 (Tex. Crim. App. 2012). In voicing his objections, appellant primarily asserted that Exhibits 9 and 10 were not relevant to the character traits elicited during Arangaramanujam's direct examination; appellant also asserted the poem in Exhibit 9 was a "joke" and "really prejudicial." Appellant's trial counsel stated several times that appellant "posted" the poem on his Facebook page. This context does not suggest that appellant sought to challenge the authenticity of Exhibits 9 and 10, and does not preserve appellant's authentication issue for our review. *See id*.

We overrule appellant's first issue.

9

## II.    Denial of Mistrial

An attorney's jury argument is proper if it fits into one or more of the following categories:   (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). During his closing argument, the State's prosecutor made the following remarks:

> The defense wants you to think that, you know, [complainant] is some Shakespearean actress that's been on Broadway, knows how to fake cry and — and pretends that, you know, her life's in shambles and called dispatch and she's just the liar of the century.  Wow.  Man. That's — whew.  What a story.  But that's not credible.  That's not a reasonable story to believe.  The — the reasonable story would — would be what she told you on the stand happened, which is her husband beat her with a belt; and then she called 9-1-1 because she didn't know what to do anymore.
>
> You know, she's conflicted.  Her culture tells her to just submit.

Appellant's trial counsel objected, asserting the prosecutor was "striking at [appellant] with a cultural reference and — and also arguing that certain actions were taken in conformity with [appellant's and complainant's] culture."  The trial court sustained appellant's objection and instructed the jury to "disregard the last remark of the prosecutor.  Do not consider it for any purpose now or later during your deliberations."   Appellant moved for a mistrial; the trial court denied appellant's motion.   Appellant's motion for mistrial and the trial court's denial preserve this issue for appellate review.  *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007).

Appellant argues on appeal that the trial court erred by failing to "grant[] a mistrial after the prosecutor made an improper racial and ethnic appeal in his final argument."   The State asserts that (1) the prosecutor's comments during closing argument were not improper; and (2) the trial court did not abuse its discretion in

denying appellant's motion for mistrial.

Because the trial court sustained appellant's objection and instructed the jury to disregard the argument, "the only adverse ruling — and thus the only occasion for making a mistake — was the trial court's denial of the motion for mistrial." *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011) (internal quotation omitted). We therefore limit our review to the trial court's denial of a mistrial. *See id*. We presume for purposes of the analysis that the challenged comments were improper. *See Crayton v. State*, 463 S.W.3d 531, 534 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### A.    Legal Standards

A mistrial is an appropriate remedy only in "extreme circumstances" for a limited class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A mistrial halts proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id*. (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)).

We review the trial court's denial of a mistrial for an abuse of discretion. *Id*.; *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). We consider the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon*, 284 S.W.3d at 884; *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. filed). "The ruling must be upheld if it was within the zone of reasonable disagreement." *Ocon*, 284 S.W.3d at 884.

To determine whether the trial court abused its discretion in denying a mistrial for improper jury argument, we balance three factors: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's

remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of evidence supporting the conviction)." *Archie*, 340 S.W.3d at 739 (citing *Hawkins*, 135 S.W.3d at 77).

A mistrial is the proper remedy for an improper jury argument only when the argument is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Pena*, 554 S.W.3d at 251; *see also Gilbert v. State*, 494 S.W.3d 758, 770 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

### B.    Application of Legal Standards

In his closing argument, the prosecutor stated that "[complainant's] culture tells her to just submit." Appellant argues this "improper racial and ethnic appeal" was not cured by the trial court's instruction to disregard.

With respect to the first *Archie* factor, we consider the severity of the misconduct, *i.e.*, the magnitude of the remark's prejudicial effects. *See Archie,* 340 S.W.3d at 739. The State argues the challenged remark draws on the following portions of complainant's testimony:  she did not want appellant arrested "[b]ecause of [her] culture;" she was "waiting for [appellant] to change;" her "culture is not to call;" and she was "giving [appellant] every time chance to [sic] him to change." Although complainant did not specifically state that her culture directed her to "submit," she made several statements associating her culture with her reluctance to call the police. Presuming for purposes of our analysis that the remark was improper, we conclude that summarizing complainant's associations of her culture with the word "submit" was not necessarily emotionally inflammatory or, if so, that it would rise to a level that curative instructions would not likely

12

prevent unfair prejudice. *See Submit*, New Oxford American Dictionary (3rd ed. 2010) ("submit" defined as "accept[ing] or yield[ing] to a superior force or to the authority or will of another person"); *see also Brown*, 270 S.W.3d at 570 (proper jury arguments include summations of the evidence and reasonable deductions from the evidence).

Turning to the second *Archie* factor, we note that the trial court instructed the jury to "disregard the last remark of the prosecutor. Do not consider it for any purpose now or later during your deliberations." An instruction to disregard an improper jury argument typically cures the error. *Phillips v. State*, 130 S.W.3d 343, 356 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). "The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Archie*, 340 S.W.3d at 734. Moreover, appellant has not pointed to any evidence suggesting the jury failed to follow the trial court's instructions. *See Nickerson v. State*, 312 S.W.3d 250, 266 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). In the absence of any evidence to the contrary, we presume the jury followed the trial court's instructions. *See id*.

For the final *Archie* factor, we examine the certainty of appellant's conviction absent the alleged misconduct. *Archie*, 340 S.W.3d at 741. Here, complainant testified that appellant hit her with a belt on November 11, 2015. Photographs were admitted showing red marks and bruising on complainant's upper arms and a red mark on her forehead; complainant testified that these photographs were taken the day of the reported incident and showed "belt marks." Officer Gonzalez testified that he saw "red marks" on complainant's forehead and arms when he responded to complainant's 9-1-1 call. Officer Gonzalez testified that complainant was "consistent in her story" and that he did not "find

[complainant] suspicious at all[.]" This testimony and reasonable inferences the jury could draw therefrom support the elements of the charged crime. *See* Tex. Penal Code Ann. § 22.01(a). We are unable to conclude with any certainty that the jury would have rejected this testimony absent the presumptively improper jury argument. *See Archie*, 340 S.W.3d at 739; *Ocon*, 284 S.W.3d at 884.

Balancing the *Archie* factors and considering the evidence in the light most favorable to the challenged ruling, the trial court's denial of a mistrial was not an abuse of discretion. *See Archie*, 340 S.W.3d at 739; *Ocon*, 284 S.W.3d at 884. We overrule appellant's second issue.

### III.       Ineffective Assistance of Counsel Claim

Arguing that he received ineffective assistance of counsel, appellant asserts that his trial counsel failed to inform him that "he would be subject to 'presumptively mandatory' deportation as an aggravated felon if he were to receive the maximum sentence." Appellant cites *Padilla v. Kentucky*, 559 U.S. 356 (2010), to support his ineffective assistance claim. Appellant raised this argument in his motion for new trial, which the trial court denied.[2]

#### A.       Legal Standards

When an ineffective assistance claim in a motion for new trial is rejected by the trial court and reasserted on appeal, we review the ineffective assistance claim as a challenge to the denial of the new trial motion. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *Green v. State*, 554 S.W.3d 785, 788-89 (Tex. App.—Houston [14th Dist.] 2018, no pet.). We review a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary. *Okonkwo v. State*, 398 S.W.3d

---

[2] Ineffective assistance claims raised in a motion for new trial are preserved for appellate review. *Reyes v. State*, 849 S.W.2d 812, 814 (Tex. Crim. App. 1993).

689, 694 (Tex. Crim. App. 2013). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Id*. We view the evidence in the light most favorable to the trial court's ruling and presume the trial court made all findings, express and implied, in favor of the prevailing party. *Id*.

When, as here, the trial court's ruling on a new trial motion is based solely upon affidavits, "a deferential rather than de novo standard applies to our review of a trial court's determination of historical facts." *Charles v. State*, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004), *superseded on other grounds by State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007). We defer to the trial court's credibility determinations and will not substitute our judgment for that of the trial court. *Frangias v. State*, 413 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

An ineffective assistance claim is analyzed pursuant to the two-prong test described in *Strickland v. Washington*, 466 U.S. 668 (1984). To show ineffective assistance of counsel under *Strickland*, a defendant must show (1) counsel's performance was deficient, *i.e.*, that counsel's assistance fell below an objective standard of reasonableness; and (2) a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 687-88; *Perez v. State*, 310 S.W.3d 890, 892-83 (Tex. Crim. App. 2010). A defendant must establish both the performance and prejudice prongs of the *Strickland* test; failure to satisfy either prong defeats the defendant's ineffectiveness claim. *Perez*, 310 S.W.3d at 893.

With respect to *Strickland*'s performance prong, our review is "highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The benchmark for judging an ineffectiveness claim is

"whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Ex parte Chandler*, 182 S.W.3d 350, 353-54 (Tex. Crim. App. 2005) (orig. proceeding) ("It is only in that relatively rare situation that a criminal defendant may obtain a new trial based upon a claim that his attorney provided constitutionally deficient assistance.").

*Strickland*'s standards apply to ineffective assistance claims asserting that counsel failed to apprise a non-citizen client about adverse immigration consequences associated with the client's legal proceedings. *See Padilla*, 559 U.S. at 369-72; *see, e.g., Ex parte Torres*, 483 S.W.3d 35, 43-44 (Tex. Crim. App. 2016). For the first prong of the *Strickland* test, *Padilla* provides that trial counsel's performance is deficient if counsel fails to advise a non-citizen client about deportation consequences that are "truly clear." 559 U.S. at 369. The immigration consequences in *Padilla* were "truly clear" where the defendant pleaded guilty "to the transportation of a large amount of marijuana," which rendered the defendant's subsequent deportation "presumptively mandatory." *Id.* at 359, 369. But *Padilla* also acknowledges that, in numerous situations, "the deportation consequences of a particular plea are unclear or uncertain." *Id.* at 369. When deportation consequences are uncertain, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

Ineffective assistance claims citing *Padilla* have been asserted to challenge the voluntariness of a guilty plea. *See, e.g., Ex parte Roldan*, 418 S.W.3d 143, 145 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Ex parte Fassi*, 388 S.W.3d 881, 883 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In this context, the prejudice prong of the *Strickland* test requires the defendant to show a reasonable probability

that, but for trial counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Ex parte Fassi*, 388 S.W.3d at 886-87. This test is "'objective'" and "'turns on what a reasonable person in the defendant's shoes would do.'" *Id*. at 887 (quoting *U.S. v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (per curiam)). When, as in this case, the prejudice prong of the *Strickland* test is dispositive, we address only that issue on appeal. *Seamster v. State*, 344 S.W.3d 592, 594 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also Strickland*, 466 U.S. at 697.

Appellant asserts that, if he had been apprised of "[t]he immigration consequences of proceeding to trial," he "would have acted differently." Although these circumstances run counter to the typical *Padilla* scenario, the prejudice prong of the *Strickland* test nonetheless may be satisfied by showing a reasonable probability that, but for trial counsel's errors, appellant would not have proceeded to trial and instead would have accepted the State's plea offer. *Ex parte Fassi*, 388 S.W.3d at 886-87 (burden on the defendant to prove that it would have been rational for the defendant to have rejected the plea deal and insisted on going to trial).

## B.     Application of Legal Standards

Appellant does not point to any part of the record to support his claim that "he would have acted differently had he known" the immigration consequences associated with proceeding to trial. In the affidavit included with his motion for new trial, appellant states:

> My trial lawyers did not tell me that a one-year sentence would result in an aggravated felony, nor did anyone else before I was convicted and sentenced. Had I known, I would not have chosen to proceed to trial. The chance of an acquittal would have been greatly outweighed in my mind by the chance that a sentence of probation would have

17

been a one-year sentence that was probated.

Assuming the trial court made all findings in favor of its decision, we presume the trial court disregarded appellant's statement that he "would not have chosen to proceed to trial." *See Okonkwo*, 398 S.W.3d at 694. In light of the deferential standard under which we review the trial court's credibility determinations and its resolution of historical facts, the trial court's decision to disregard appellant's statement does not constitute an abuse of its discretion. In the absence of any other evidence supporting the prejudice prong of the *Strickland* test, the trial court did not err in denying appellant's motion for new trial.

Moreover, the same immigration consequences likely would have resulted from the other course of action available to appellant during the underlying proceedings. Appellant asserts in his affidavit that he would have accepted "a sentence of probation [which] would have been a one-year sentence that was probated." Corroborating appellant's statement regarding an alternative offer, the April 5, 2017 affidavit of prosecutor Andrew J. Figliuzzi states that appellant was offered "a Deferred Adjudication in order to resolve the case" and that the offer was left open during the pendency of the case up until trial.[3] But like appellant's conviction rendered after the jury's "guilty" verdict, appellant's acceptance of the State's deferred adjudication offer would have rendered deportation "presumptively mandatory" under federal law. *See Padilla*, 559 U.S. at 369

Federal law provides that an "alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable." 8 U.S.C.A. § 1227(a)(2)(E)(i) (West 2017). A "crime of domestic violence" is defined as "any crime of violence . . . against a person committed by a current or former spouse of

---

[3] "Deferred adjudication" may also be referred to as "probation." *See Davis v. State*, 968 S.W.2d 368, 369 (Tex. Crim. App. 1998).

the person." *Id*. A "crime of violence" is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C.A. § 16(a) (West 2015).

Appellant was charged with assaulting a family member, a Class A misdemeanor offense. *See* Tex. Penal Code Ann. § 22.01(a). This offense falls within the "crime of domestic violence" described by section 1227 and a conviction for this offense may result in deportation. *See* 8 U.S.C.A. § 1227(a)(2)(E)(i); 18 U.S.C.A. § 16(a); *see, e.g., Ex parte Aguilera*, 540 S.W.3d 239, 242, 248, 251(Tex. App.—Houston [1st Dist.] 2018, no pet.) (defendant pleaded guilty to charge for assault of a family member in exchange for one-year deferred adjudication; defendant subject to deportation under federal law). For purposes of deportation, a "conviction" includes deferred adjudication. *See* 8 U.S.C.A. § 1101(48)(A) (West 2017) (defining "conviction" to include, "if adjudication of guilt has been withheld, where . . . the alien has entered a plea of guilty or nolo contendere" and "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed").

Accordingly, had appellant accepted the State's offer of deferred adjudication, he nonetheless would have been subject to mandatory deportation under federal law. *See* 8 U.S.C.A. §§ 1101(48)(A), 1227 (a)(2)(E)(i); 18 U.S.C.A § 16(a); *see, e.g., Ex parte Aguilera*, 540 S.W.3d at 242, 248, 251. This conclusion does not support appellant's contention that "he would have acted differently had he known" the immigration consequences associated with proceeding to trial — the deportation consequences were the same whether appellant proceeded to trial or accepted an offer of deferred adjudication.

Because the evidence does not show appellant was prejudiced by his trial counsel's alleged errors, the trial court's denial of appellant's new trial motion

does not constitute an abuse of discretion. *See Strickland*, 466 U.S. at 697; *Seamster*, 344 S.W.3d at 594. We overrule appellant's third issue.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.


/s/    Meagan Hassan
Justice


Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).